## ANCHER v. LAMB.

### No. 1172.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 22, 1952.

Decided Feb. 20, 1952.

Herman Miller, Washington, D. C., for appellant.

John F. Hillyard, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Plaintiff sued for possession of two adjoining houses which defendant had been operating as rooming houses. The basis of his claim was that as authorized by the District of Columbia Emergency Rent Act, Code 1940, Supp. VII, § 45–1605(b)(4), he

wished possession for the purpose of demolishing the two houses and replacing them with new construction. A jury gave plaintiff a verdict for possession and defendant brings this appeal.

■ Appellee has moved to dismiss the appeal on the ground that he has recovered possession of the houses and that hence the appeal has become moot. We think the point is not well taken. There seems to be no question that defendant did not yield possession to plaintiff voluntarily. Had he done so the appeal would be moot. Price v. Wilson, D.C.Mun.App., 32 A.2d 109. This defendant was forced to vacate by a formal writ of restitution issued by the Municipal Court at the instance of plaintiff. Therefore his right to prosecute an appeal was not lost. See Quick v. Paregol, D.C.Mun.App., 61 A.2d 407; Morfessis v. Marvins Credit, Inc., D.C. Mun.App., 77 A.2d 178.

■ Appellant contends that the suit should have been dismissed by the trial court because it was not filed in the name of the real party in interest. In the caption of the complaint the name of plaintiff was given as "Leon F. Lamb, Agent." The lease between the parties described the lessor in the same words and it was executed by Leon F. Lamb, Agent. Hence Lamb had the right to maintain the suit. Koehne v. Harvey, D.C.Mun.App., 45 A.2d 780, appeal denied by U.S.C.A., April 11, 1946. Indeed in this case the right of plaintiff to maintain the suit is clearer than in the Koehne case, because his status as landlord was established by direct contract with the lessee while in the Koehne case plaintiff's status derived from a lease assigned in blank by a former rental agent and delivered to the new owners who in turn delivered it to plaintiff.

Heiskell v. Mozie, 65 App.D.C. 255, 82 F. 2d 861, 863, cited by appellant, gives no support to her position. There, in a contempt proceeding, on facts greatly different from those before us and in construing a special rule of court prohibiting anyone other than an attorney to appear in a representative capacity, it was held that a real estate agent was not "the real party in interest" so as to be entitled to manage his own cause personally. But dealing more directly with the same question we have here, the court said that an agent having the right to make a lease in his own name, "the action could properly be brought in the name of the agent." Furthermore during the course of the trial this plaintiff was granted leave, without objection, to amend "to show that the plaintiff was not only the lessor * * * but also that he is the agent for the Ford Enterprises, as testified to by plaintiff." Thus not only plaintiff's agency but the identity of his principal were spread on the record, leaving no question as to liability for costs, or any later potential question of res judicata, or any other possible prejudice to defendant by permitting the wrong party to maintain the suit. We rule that defendant was not entitled to have the suit dismissed.

■ Tenant's next contention is that the landlord's proof did not entitle him to possession under that section of the Rent Act which authorizes the eviction of a tenant when "the landlord seeks in good faith to recover possession for the immediate purpose of substantially altering, remodeling, or demolishing the property and replacing it with new construction, the plans for which altered, remodeled, or new construction having been filed with and approved by the Commissioners of the District of Columbia". Code 1940, Supp. VII, § 45–1605(b)(4). Principally tenant's argument is that the evidence did not establish that "new construction" was encompassed in the owner's project and that the "plans" had not been approved by the District of Columbia Commissioners. As to the first of these contentions we think it is sufficient to say that the uncontradicted evidence was that five houses, including the two here in suit, were to be razed (the other three had already been razed) for a parking lot project and that plaintiff testified that the entire area was to be graded and then paved, fences would be put in, a parking lot office erected, changes made in the curbing, water pipes and taps would be installed and electrical work and wiring done; that signs would be erected, painting

would be done and driveways and curbing put in. He said that the project would cost about $8,000. We think that this testimony, which the jury apparently accepted as true, was sufficient to justify plaintiff's claim under the section of the Act above quoted. Plaintiff's claim was fully supported by official records of the D. C. Government, including a plat showing the dimensions of the proposed parking lot. (On cross examination plaintiff was asked concerning blueprints covering the work, and answered that on such a project it was not necessary to present blueprints in order to obtain all the necessary permits.) Appellant contends that "in order to comply with the statute as a matter of law some kind of new building has to be constructed." We do not so read the Act. We do not think that Congress intended that an owner in such a situation can only prevail when he proposes to erect a new building. We rule that the nature and extent of the work done and proposed to be done by the owner formed a sufficient basis for his suit.

■ As to tenant's contention that the "plans" were not approved by the District of Columbia Commissioners we note that a "raze permit" was issued by the Department of Building Inspection authorizing the demolition of the five buildings, including the two here in suit. This was followed by a building permit authorizing the erection of a shed on the lot. There was also in evidence a letter from the acting Secretary of the Board of Commissioners, written at the direction of the Commissioners themselves, certifying that when the two permits above mentioned were issued "they carried with them the approval of the Commissioners of the District of Columbia." Another letter from the Director of Inspection certified that his office was charged with the approval of all building permits and that when such permits are issued by him they carry with them the approval of the Commissioners. A still later letter from the Secretary of the Board of Commissioners, referring specifically to the work to be done on these premises and specifically identifying the two permits to which we have referred, recited that "these permits were approved by the Commissioners of the District of Columbia * *"

Under Code 1940, § 1–228, the District Commissioners were authorized to make and enforce building regulations and pursuant to that authority they adopted a building code by which the Inspector of Buildings was invested with the authority to issue permits for "new structures, alterations," etc. Viewing the matter in a reasonable and practical light we think it cannot be said that approval of the Commissioners was lacking for the project the plaintiff had undertaken. The permits above described were not only issued under the general authority given the Director of Inspection but specifically "carried with them the approval of the Commissioners." To require more than has been shown in this case would, we think, be imposing on a suing landlord an artificial burden which Congress never intended.

Appellant cites our decision in Tatum v. Townsend, D.C.Mun.App., 61 A.2d 478, where we held that one seeking to recover possession on similar grounds could not maintain his suit because construction plans had not been approved before the filing of the suit. Here all the conditions necessary to the filing of the suit existed and were brought about well in advance of the filing date. The "raze permit" was issued on January 8, 1951 and the permit for the shed on April 5, 1951. Suit was not commenced until May 2, 1951. Hence there was no element of prematureness in the case.

Affirmed.